**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03665-MEH

PERFX WIRELINE SERVICES, LLC,

     Plaintiff,

v.

DYNAENERGETICS US, INC.,
DYNAENERGETICS EUROPE GMBH,
and DMC GLOBAL INC.,

     Defendants.

---

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) TO THE
WESTERN DISTRICT OF TEXAS**

---

**TABLE OF CONTENTS**

I.   FACTS .................................................................................................. 2

     A.   PerfX Ignored DynaEnergetics Europe's Notice Letter and Instead
          Filed This Anticipatory Declaratory Judgment Action ................................. 3

     B.   Four Patent Infringement Actions Involving the '697 Patent Are
          Pending in the Western District of Texas. ................................................... 4

     C.   DynaEnergetics' Flagship U.S. Location Is in the Western District of
          Texas and Key Witnesses Are Located There. ........................................... 5

     D.   PerfX Has Facilities in the Western District of Texas and a
          Significant Portion of PerfX's Infringing Sales and Key Witnesses
          Are in the Western District of Texas ........................................................... 7

II.  LEGAL STANDARDS ........................................................................... 9

III. ARGUMENT ........................................................................................ 10

     A.   This Action Could Have Been Brought in the Western District of
          Texas. ...................................................................................................... 10

     B.   The Interests of Justice and the Convenience of Witnesses
          Strongly Favor Transfer to the Western District of Texas. ........................ 12

IV.  CONCLUSION .................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Buzas Baseball, Inc. v. Board of Regents of Univ. System of Georgia*,
No. 98-4098, 1999 WL 682883 (10th Cir. Sept. 2, 1999) ................................... 13

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991)..................................................................... 10, 11

*Cincinnati Ins. Co. v. O'Leary Paint Co.*,
No. 12-CV-00446-PAB, 676 F. Supp. 2d 623 (W.D. Mich. 2009) ....................... 13

*Cobe Lab., Inc.v. Baxter Int'l Inc.*,
No. CIV. A. 89 N 2084 WL 100233 (D. Colo. June 14, 1990)............................. 13

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
711 F. Supp. 2d 626 (E.D. Va. 2010) ................................................................. 17

*Cook v. Atchison, Topeka & Santa Fe Ry. Co.*,
816 F. Supp. 667 (D. Kan. 1993)........................................................................ 17

*CQGT, LLC v. Trading Techs. Int'l*,
No. 05-cv-01584-REB-OES, 2006 WL 2711770 (D. Colo. Sept. 21,
2006) ................................................................................................................. 16

*DynaEnergetics Europe GmbH v. GR Energy Services Operating GP LLC*,
No 6:21-cv-00085-ADA (WDTX)....................................................................... 1, 4

*DynaEnergetics Europe GmbH v. NexTier Oilfield Sols. Inc.*,
No. 6:20-cv-01201-ADA (W.D. Tex.) ................................................................. 1, 4

*DynaEnergetics Europe GmbH v. Rock Completion Tools, LLC*,
No 6:21-cv-00084-ADA (WDTX)....................................................................... 1, 4

*DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC*,
No. 6:20-cv-01110-ADA (W.D. Tex.) ................................................................. 1, 4

*EC Data Sys., Inc. v. J2 Global, Inc.*,
No. 12-cv-00446-PAB, 2012 WL 3764765 (D. Colo. Aug. 29, 2012)............ 13, 16

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153, 1168–69 (10th Cir. 2010).................................................... 17, 20

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
618 F.3d 1153 (10th Cir. 2010)................................................................... 10, 14

*Frontier Airlines, Inc. Ret. Plan for Pilots v. Sec. Pac. Nat'l Bank, N.A.*,
   696 F. Supp. 1403 (D. Colo. 1988) ........................................................................ 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................................................... 11

*In re Collins & Aikman Corp. Sec. Litig.*,
   438 F. Supp. 2d 392 (S.D.N.Y. 2006) .................................................................. 20

*In re Hoffmann-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................... 21

*Interactive Music Tech., LLC v. Roland Corp. U.S.*,
   No. 6:07-CV-282, 2008 WL 245142 (E.D. Tex. Jan. 29, 2008) .......................... 16

*Kerr Machine Co. v. Vulcan Industrial Holdings, LLC*,
   No. 6:20-CV-200-ADA, Dkt. 34 (W.D. Tex. Aug. 11, 2020) ................................ 15

*Kreinberg v. Dow Chemical Co.*,
   496 F. Supp. 2d 329 (S.D.N.Y. 2007) .................................................................. 20

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) .............................................................................. 15, 16, 17

*Nacogdoches Oil & Gas, L.L.C. v. Leading Sols., Inc.*,
   No. 06–2551–CM, 2007 WL 2402723 (D. Kan. Aug. 17, 2007) .......................... 14

*Potter Voice Techs, LLC v. Apple, Inc.*,
   No. 12-cv-01096–REB–CBS, 2013 WL 1333483 (D. Colo. Mar. 29,
   2013) ............................................................................................................ 14, 18

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) ........................................................................... 14

*Schecher v. Purdue Pharma L.P.*,
   317 F. Supp. 2d 1253 (D. Kan. 2004) .................................................................. 10

*Scheidt v. Klein*,
   956 F.2d 963 (10th Cir. 1992) ............................................................................. 10

*See Ervin & Assocs., Inc. v. Cisneros*,
   939 F. Supp. 793 (D. Colo. 1996) ....................................................................... 19

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ............................................................................................... 9

*Telecomm. Sys., Inc. v. TracBeam, L.L.C.*,
      No. 11-cv–02519-WYD-MJW, 2012 WL 371578 (D. Colo. Feb. 6, 2012) ........... 16

*Volkswagen of Am., Inc.*,
      566 F.3d 1349 (Fed. Cir. 2009) .................................................................... 15, 16

*Whistler Group v. PNI Corp.*,
      No. 3:03-CV-1536-G, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) .................. 17

**Statutes**

28 U.S.C. § 1391(b)(2) ................................................................................................. 12

28 U.S.C. § 1404(a) ............................................................................................... passim

35 U.S.C. §§ 102 .......................................................................................................... 17

**Rules**

Federal Rule of Evidence 408(a) .................................................................................... 3

Plaintiff PerfX Wireline Services, LLC ("PerfX") filed this anticipatory declaratory judgment action as an improper attempt to forum shop.  The interests of justice and the convenience of witnesses strongly favor transfer of this case to the Waco Division of the Western District of Texas pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)") at least because:

- Four lawsuits involving the validity of the patent-at-issue in this Action—U.S. Patent No. 10,844,697 ("the '697 Patent")—are pending before Judge Albright of the Western District of Texas[1];

- DynaEnergetics' flagship U.S. location is in the Western District of Texas;

- PerfX has significant operations in Midland, Texas, in the Western District of Texas;

- PerfX's infringement of the '697 Patent is concentrated in the Permian Basin, in the Western District of Texas; and

- Key fact witnesses, including party witnesses and potential third-party witnesses, are primarily located in the Western District of Texas.

Accordingly, Defendants DynaEnergetics US, Inc. ("DynaEnergetics US"), DynaEnergetics Europe GmbH ("DynaEnergetics Europe") (collectively

---

[1] *DynaEnergetics Europe GmbH v. NexTier Oilfield Sols. Inc.*, No. 6:20-cv-01201-ADA (W.D. Tex.); *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC*, No. 6:20-cv-01110-ADA (W.D. Tex.); *DynaEnergetics Europe GmbH v. GR Energy Services Operating GP LLC*, No 6:21-cv-00085-ADA (WDTX); *DynaEnergetics Europe GmbH v. Rock Completion Tools, LLC*, No 6:21-cv-00084-ADA (WDTX).

"DynaEnergetics"), and DMC Global Inc. ("DMC Global")[2] (collectively, "Defendants") respectfully request that the Court grant this Motion to Transfer.[3]

## I. FACTS

By way of background, DynaEnergetics is a leader in the field of well completion, perforating, well abandonment, and seismic technologies. Dkt. 1-4 at 1. DynaEnergetics has a long history of technological innovation, including innovation in the manufacture of detonators, detonating cords, and perforating hardware. *Id.* In connection with its research and development efforts, DynaEnergetics Europe has developed groundbreaking inventions related to wireless detonator assemblies, bulkhead assemblies, perforating gun assemblies, and methods of assembling same, and specifically in development and introduction to the market of its game changing DynaStage® perforating system. *Id.* These inventions are currently protected by multiple United States patents, including the '697 Patent at issue in this Action. *Id.* The '697 Patent is owned by DynaEnergetics Europe and exclusively licensed to DynaEnergetics US.

---

[2] DMC Global, the parent company of DynaEnergetics US and DynaEnergetics Europe, has filed a Motion to Dismiss concurrently herewith because it is not a proper defendant in this Action. Dkt. 24. DMC Global joins this Motion to Transfer in the alternative, if its Motion to Dismiss is not granted.

[3] As part of their Answer, Defendants DynaEnergetics Europe and DynaEnergetics US have filed a compulsory counterclaim for infringement of the '697 Patent Dkt. 20. DynaEnergetics' counterclaim for infringement should be transferred to the Western District of Texas along with PerfX's declaratory judgment claim because it arises out of the same transaction or occurrence as PerfX's declaratory judgment claim and the Western District of Texas is the most convenient forum for the counterclaim for the same reasons that it is the most convenient forum for PerfX's declaratory judgment claim.

**A.    PerfX Ignored DynaEnergetics Europe's Notice Letter and Instead Filed This Anticipatory Declaratory Judgment Action.**

On September 11, 2020, shortly after DynaEnergetics received a Notice of Allowance for the '697 Patent, Lisa Moyles—as counsel for DynaEnergetics Europe— sent PerfX a "DynaStage Patent Notice Letter" pursuant to Federal Rule of Evidence 408(a).  Dkt. 1 ¶ 18; Dkt. 1-4 at 1 ("This firm represents DynaEnergetics Europe GmbH . . . in intellectual property matters.").  The letter included the language of Claim 1 of the '697 Patent and notified PerfX that its XConnect system infringes one or more of DynaEnergetics Europe's patents related to the DynaStage® perforating system.  Dkt. 1-4.  The letter was sent as an attempt to resolve a potential dispute regarding PerfX's infringement.  *Id.* at 4.  PerfX responded on November 18, 2020, requesting a claim chart comparing the claims of the '697 Patent with PerfX's XConnect system.

On November 25, 2020, Ms. Moyles sent another letter to PerfX informing PerfX that the '697 Patent had issued the previous day.  Ex. A.  The follow-up letter included a claim chart demonstrating how PerfX's XConnect system infringes Claim 1 of the '697 Patent.  *Id.*; Dkt. 1 ¶ 20; Dkt. 1-5.  Ms. Moyles further notified PerfX that DynaEnergetics had already filed a patent infringement suit against one of PerfX's competitors in the Western District of Texas and attached a copy of the complaint filed in that action.  Dkt. 1 ¶ 19.

Rather than responding to the letters with its alleged non-infringement positions, and with full knowledge that DynaEnergetics had already sued a competitor on the '697 Patent in the Western District of Texas, PerfX filed this anticipatory Action in this District on December 15, 2020, seeking a declaratory judgment of non-infringement of the same

patent because "PerfX has a real and imminent belief that suit will be filed against it."  Dkt. 1 ¶ 26.

**B.    Four Patent Infringement Actions Involving the '697 Patent Are Pending in the Western District of Texas.**

Before and after this Action was filed, DynaEnergetics filed four lawsuits in the Waco Division of the Western District of Texas against others for infringing the '697 Patent.  The date of such filings and the lawsuits are:

- December 4, 2020: *DynaEnergetics Europe GmbH v. Yellow Jacket Oil Tools, LLC*, No. 6:20-cv-01110-ADA (W.D. Tex., Waco Div.);

- December 30, 2020: *DynaEnergetics Europe GmbH v. NexTier Oilfield Sols. Inc.*, No. 6:20-cv-01201-ADA (W.D. Tex., Waco Div.);

- January 28, 2021: *DynaEnergetics Europe GmbH v. GR Energy Services Operating GP LLC*, No 6:21-cv-00085-ADA (W.D. Tex., Waco Div.);

- January 28, 2021: *DynaEnergetics Europe GmbH v. Rock Completion Tools, LLC*, No 6:21-cv-00084-ADA (W.D. Tex., Waco Div.).[4]

All four cases (the "Pending '697 Patent Cases") are assigned to Judge Albright, who has sought to establish the Western District of Texas as a "serious venue for sophisticated patent litigation," stating: "There is nothing I enjoy more than working on patent cases. I think, by and large, the lawyers are exceptional and the issues before me are always intellectually challenging. I couldn't imagine a better docket than what I've got. I feel unbelievably lucky."  Timothy Witherspoon, *Waco Becoming Hotbed for Intellectual*

---

[4] DynaEnergetics US is a named plaintiff in each of the four actions.

*Property Cases with New Federal Judge*, Waco Tribune-Herald (Jan. 18, 2020), https://wacotrib.com/news/local/waco-becoming-hotbed-for-intellectual-property-cases-with-new-federal-judge/article_0bcd75b0-07c5-5e70-b371-b20e059a3717.html.   As set forth below, docket statistics indicate that the Pending '697 Patent Cases will likely be adjudicated before this Action.

### C.   DynaEnergetics' Flagship U.S. Location Is in the Western District of Texas and Key Witnesses Are Located There.

DynaEnergetics' flagship U.S. location is in Blum, Texas, in the Western District of Texas.   DynaEnergetics US, though incorporated in Colorado, is headquartered in Houston, Texas (not in Colorado, as asserted in PerfX's Complaint (Dkt. 1 ¶ 6)); DynaEnergetics Europe is a German company without a physical presence in the U.S.; and DMC Global—the parent company of DynaEnergetics US and DynaEnergetics Europe, ostensibly named as a Defendant because it is headquartered in Broomfield, Colorado—has no connection to the facts of this case and should be dismissed as set out in the concurrently filed Motion to Dismiss.   Dkt. 1 ¶¶ 5–8; Dkt. 24.   Notably, DynaEnergetics US's Blum campus in the Western District of Texas has the largest number of employees and largest footprint of any DynaEnergetics facility in the United States.   DynaEnergetics US opened the 74,000-square-foot state-of-the-art campus in 2018 to support growth of its highly successful DynaStage® perforating system (protected by several patents including the '697 Patent).   As of the end of January 2021, the Blum campus employed 131 individuals.   Ex. B, Declaration of Ian Grieves ("Grieves Decl.") ¶¶ 8-11.   Moreover, an estimated 65–75% of DynaEnergetics US's total annual revenue is derived from activity in the Western District of Texas.   *Id.* ¶ 18.   For example, in FY 2020,

out of approximately $146 million in total revenue, over $100 million was directly tied to products made in the Western District of Texas, sold to companies in the Western District of Texas, or deployed at drilling sites in the Western District of Texas. *Id.*

With respect to likely key witnesses, although all inventors of the '697 Patent live outside of the United States, Thilo Scharf and Liam McNelis (the only inventors currently employed by DynaEnergetics Europe) regularly travel[5] to the Blum campus in the Western District of Texas, as does Ian Grieves, President of DynaEnergetics US. Grieves Decl. ¶ 15. Moreover, Brian Engelkes, DynaEnergetics US's Plant Controller, is based in Blum, Texas, and Gernot Burmeister, Vice President of North and South America Sales, lives in and is based in Austin, Texas, also in the Western District of Texas. As a result of these facts, certain relevant documents, such as manufacturing and shipping documents, are located in Blum. *Id.* ¶¶ 16-17.

Finally, many of DynaEnergetics' customers, direct (service companies) and indirect (exploration & production companies), are based in the Western District of Texas or operate there, with Midland, Texas being the epicenter because of the Permian Basin, "North America's most-prolific oil field." *See* Grieves Decl. ¶ 18; David Wethe, *Oil Drilling in U.S. Ends Fraught 2020 at Pre-Shale Levels*, BLOOMBERG (Dec. 31, 2020), https://www.bloomberg.com/news/articles/2020-12-30/oil-drilling-in-u-s-ends-a-fraught-2020-at-pre-shale-era-levels. For at least these reasons, DynaEnergetics' home forum is the Western District of Texas.

---

[5] Of course, given the COVID-19 pandemic and restrictions on domestic and international travel, these employees are not traveling anywhere at present.

### D. PerfX Has Facilities in the Western District of Texas and a Significant Portion of PerfX's Infringing Sales and Key Witnesses Are in the Western District of Texas.

PerfX has a significant presence in the Western District of Texas.  PerfX is a Nevada limited liability company "located in North Dakota and Texas" and nominally headquartered in Denver, Colorado.  PERFX, https://www.perfxwireline.com/ (last visited Feb. 12, 2021).  Notably, PerfX's Texas facilities are in Midland, Texas, which is in the Western District of Texas.  *Contact*, PERFX, https://www.perfxwireline.com/contact (last visited Feb. 12, 2021).  PerfX operates "Wireline Pumpdown Crews" in Texas, Oklahoma, and North Dakota.  *PerfX*, LINKEDIN, https://www.linkedin.com/company/perfxwireline/about/ (last visited Feb. 12, 2021) (making no reference to crews in Colorado).

Defendants believe that at least a significant portion, if not a majority, of PerfX's customers and sales of the XConnect system (the product accused of infringing the '697 Patent) are in the Permian Basin, "North America's most-prolific oil field" located primarily in the Western District of Texas.  *See* Grieves Decl. ¶18; Wethe, *supra*.  PerfX's recent XConnect system advertisement tags Bakken (MT and ND), the Permian Basin (TX and NM), Eagle Ford Shale (TX), Powder River Basin (MT and WY), Haynesville Shale (TX and LA), and DJ Basin (CO, WY, NE, KS).  *PerfX*, LINKEDIN, https://www.linkedin.com/posts/perfxwireline_perfx-thewirelineperforatingexperts-xconnect-activity-6742810770737889280-E2Wj (last visited Feb. 12, 2021).  The DJ Basin—the only tagged location at least partly in Colorado—has only five active rigs in

total, dwarfed by the Permian Basin's 175 active rigs and Eagle Ford's 25 active rigs in Texas:



Wethe, *supra*..  Thus, at best, only a small fraction of PerfX's sales of the accused XConnect system (if any) are in Colorado.

Moreover, the following PerfX employees are located in the Western District of Texas and are expected to be key witnesses in this dispute:

- Tim Roberts, District Manager who "[s]uccessfuly established operations in Texas," is located in Midland, Texas.  *Tim Roberts*, LINKEDIN, https://www.linkedin.com/in/timroberts04/ (last visited Feb. 12, 2021).

- Timothy Geary, Director of Operations located in Odessa/Midland, Texas, who is "[r]esponsible for . . . all aspects of field operations" and who "[w]orked closely

with R&D team to ensure technology implementation in the field." *Timothy Geary*, LINKEDIN, https://www.linkedin.com/in/gearytimothy/ (last visited Feb. 12, 2021).

Accordingly, there can be no dispute that PerfX has a significant presence in the Western District of Texas and key witnesses are located there.

## II.   LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The decision to transfer venue lies in the sole discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted). Section 1404(a) "is designed to allow the District Court to transfer cases to other districts, when to do so would be to prevent waste of time, energy, and money, and would prevent unnecessary inconvenience and expense." *Frontier Airlines, Inc. Ret. Plan for Pilots v. Sec. Pac. Nat'l Bank, N.A.*, 696 F. Supp. 1403, 1406 (D. Colo. 1988) (transferring a case in part because a "highly related" action was pending in the transferee district).

In exercising discretionary power under Section 1404(a) to order a transfer, courts consider the following factors:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions

as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and [] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).   In addition, courts may also consider the location of related litigation.   *See Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1261 (D. Kan. 2004) ("The pendency of related litigation in another forum is a proper factor to consider in resolving choice of venue questions.") (internal quotations and citations omitted).

The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."  *Employers Mut. Cas. Co.*, 618 F.3d at 1167 (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

## III.   ARGUMENT

### A.   This Action Could Have Been Brought in the Western District of Texas.

The proposed transferee district for a Section 1404(a) transfer must be "a district or division where [the action] might have been brought."  28 U.S.C. § 1404(a).  As a threshold matter, as set forth in DMC Global's Motion to Dismiss (Dkt. 24), DMC Global is not a proper defendant to this Action.  DMC Global is simply the parent corporation of DynaEnergetics and does not have any ownership interest in the '697 Patent.  Dkt. 1 ¶ 8.

This Action arises from DynaEnergetics Europe's assertions (via its outside counsel, Ms. Moyles) that PerfX infringes the '697 Patent owned by DynaEnergetics Europe and exclusively licensed to DynaEnergetics US, not from any direct involvement by DMC Global.  *See id.* ¶¶ 16–20; *supra* Part I.B; Dkt. 1-4; Ex. A.  Accordingly, PerfX could have brought this action against DynaEnergetics in the Western District of Texas because both personal jurisdiction and venue are proper there.  *See Chrysler Credit*, 928 F.2d at 1515 (§ 1404 requires the transferee court to have "personal jurisdiction <u>over the defendants</u>") (emphasis added).

For example, DynaEnergetics does not contest that it is subject to personal jurisdiction in Texas for purposes of this Action.  DynaEnergetics US is headquartered in Texas and has its flagship U.S. location in the Western District of Texas.  DynaEnergetics US and DynaEnergetics Europe[6] have conducted business and have systematic and continuous contacts with the State of Texas, including through DynaEnergetics US' marketing and sales of the patented DynaStage® perforating system in the Permian Basin in the Western District of Texas and through DynaEnergetics Europe's exclusive licensing of the '697 Patent to DynaEnergetics US, headquartered in Texas.  *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 416 (1984) (a corporation is subject to personal jurisdiction in a forum in which it maintains "continuous and systematic" business contacts).  Additionally, DynaEnergetics US and DynaEnergetics Europe are

---

[6] As noted above and in the concurrently filed motion to dismiss, DMC Global contests that it is a proper party to this lawsuit.  If the Court deems that it is a proper party, then its role as DynaEnergetics' parent would be the only basis for such a finding.

currently availing themselves of the Western District of Texas court's jurisdiction in other patent cases.  *See supra* Part I.B.

In addition, venue is proper in the Western District of Texas because "a substantial part of the events or omissions giving rise to the claims occurred" in the Western District of Texas via PerfX's infringement of the '697 Patent through sales, manufacture, distribution, and/or offers to sell its XConnect system in the Permian Basin.  28 U.S.C. § 1391(b)(2); *see supra* Part I.D.  Venue is further proper because DynaEnergetics US is subject to personal jurisdiction in the Western District of Texas through its flagship U.S. location in Blum, Texas and because DynaEnergetics Europe is a foreign corporation within the personal jurisdiction of the Western District of Texas.  28 U.S.C. § 1391.  Thus, PerfX could have brought this action in the Western District of Texas.

## B. The Interests of Justice and the Convenience of Witnesses Strongly Favor Transfer to the Western District of Texas.

As set forth below, the interests of justice and the convenience of witnesses strongly favor transfer of this Action to the Waco Division of Western District of Texas, where Judge Albright is already adjudicating the same technical patent claims at issue here in the Pending '697 Patent Cases.

### 1. PerfX's preference for filing in this District is entitled little weight.

PerfX's choice of forum carries little to no weight because it preemptively filed this Action *after* receiving notice that DynaEnergetics Europe would file a lawsuit in the Western District of Texas based on infringement of the '697 Patent—the same patent at issue in the Pending '697 Patent Cases.  *See supra* Part I.B.  Rather than responding to

this notice with its alleged non-infringement positions, and with full knowledge that DynaEnergetics had already sued a competitor on the '697 Patent in the Western District of Texas, PerfX filed this Action in this District seeking a declaratory judgment of non-infringement of the same patent.  *See id.*  Under established law, this gamesmanship should be disregarded for purposes of determining the appropriate venue.

Specifically, when faced with such preemptive strikes, courts give less weight to the plaintiff's choice of forum.  *See Cobe Lab., Inc.v. Baxter Int'l Inc.*, No. CIV. A. 89 N 2084, 1990 WL 100233, at *1 (D. Colo. June 14, 1990) ("When the first action is for a declaratory judgment and appears triggered by a notice of patent infringement letter, courts have concluded that special circumstances warrant an exception to the first-filed rule. The decision whether to transfer is left to the discretion of the court, to be exercised to secure wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.") (internal quotations and citations omitted); *EC Data Sys., Inc. v. J2 Global, Inc.*, No. 12-cv-00446-PAB, 2012 WL 3764765, at *3 (D. Colo. Aug. 29, 2012) ("a district court may choose to give little or *no* weight to a declaratory-judgment plaintiff's choice of forum in the section 1404(a) analysis") (emphasis in original) (quoting *Cincinnati Ins. Co. v. O'Leary Paint Co.*, No. 12-CV-00446-PAB, 676 F. Supp. 2d 623, 631 (W.D. Mich. 2009)); *see also Buzas Baseball, Inc. v. Board of Regents of Univ. System of Georgia*, No. 98-4098, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999) ("A district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction.") (citation omitted); *Nacogdoches*

*Oil & Gas, L.L.C. v. Leading Sols., Inc.*, No. 06–2551–CM, 2007 WL 2402723, at *2-3 (D. Kan. Aug. 17, 2007) (noting exception to first-filed rule when first-filed declaratory judgment suit is merely a "preemptive strike" that mirrors an anticipated adversary filing in another jurisdiction).

PerfX's choice of forum is even more questionable, and entitled to even less weight, because "the facts giving rise to the lawsuit have no material relation or significant connection to" this District. *Employers Mut. Cas. Co.*, 618 F.3d at 1168 (internal quotations and citations omitted). By virtue of the Permian Basin's location primarily in the Western District of Texas and the exceptionally low rig count in Colorado, DynaEnergetics Europe's infringement allegations regarding PerfX's XConnect system— which gave rise to this Action—are significantly more tied to the Western District of Texas than to this District. *See supra* Part I.D; *see also Potter Voice Techs, LLC v. Apple, Inc.*, No. 12–cv–01096–REB–CBS, 2013 WL 1333483, at *3 (D. Colo. Mar. 29, 2013) (finding that the plaintiff's choice of forum carried "little weight" where "the infringements alleged [were] not tied to Colorado any more than to other states and districts"). Thus, no deference should be given to PerfX's choice of forum.

### 2. Judicial economy and consistency strongly favor transfer to the Western District of Texas.

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (finding no abuse of discretion in district court's venue transfer because "although the convenience of the parties and witnesses did not favor either the Indiana or the California court, the interests of judicial economy would be

served by trial in the Indiana court") (internal quotations and citations omitted). This is especially true in patent cases such as this Action, which involve "several highly technical factual issues" that will consume the Court's resources. *Id.*; *see also In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources. Because the district court's decision is based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents, mandamus is inappropriate under our precedents.").

Here, the four Pending '697 Patent Cases are already being adjudicated by Judge Albright in the Western District of Texas, a "serious venue" for patent litigation. *Supra* Part I.B. Judge Albright's expedited schedule increases the likelihood that the Pending '697 Patent Cases will reach patent litigation milestones, including exchanges of infringement and invalidity contentions and a *Markman* hearing, before this Action.[7] PerfX's preemptive declaratory judgment filing in this District thus creates judicial inefficiencies because it would require this Court—in addition to the Western District of Texas—to (1) become familiar with the complex perforation gun system technology claimed in the '697 Patent, (2) engage in claim construction of the '697 Patent, and (3) potentially rule upon invalidity arguments regarding the '697 Patent. Under the circumstances, transferring this Action to the Western District of Texas, which is already

---

[7] An exemplary scheduling order issued by Judge Albright in August 2020 scheduled claim construction briefing and the *Markman* hearing within nine months after the case was filed. *See Kerr Machine Co. v. Vulcan Industrial Holdings, LLC*, No. 6:20-CV-200-ADA, Dkt. 34 (W.D. Tex. Aug. 11, 2020).

engaged in these tasks—would conserve judicial and party resources.  *See, e.g.*, *In re Volkswagen of Am., Inc.*, 566 F.3d at 1351 ("judicial economy is served by having the same district court try the cases involving the same patents"); *EC Data Sys., Inc.*, 2012 WL 3764765, at *3 (transferring to a district where cases related to the same patents were pending "[b]ecause plaintiff's choice of forum, to the extent it is entitled to deference here, is strongly outweighed by the judicial economy afforded by keeping the related actions together"); *CQGT, LLC v. Trading Techs. Int'l*, No. 05-cv-01584-REB-OES, 2006 WL 2711770, at *2 (D. Colo. Sept. 21, 2006) (transferring anticipatory declaratory judgment action, including because of "the efficiency of resolving all of the related patent infringement actions in one court"); *Interactive Music Tech., LLC v. Roland Corp. U.S.*, No. 6:07-CV-282, 2008 WL 245142, at *11 (E.D. Tex. Jan. 29, 2008) ("Where the judicial economy factor weighs heaviest, however, is in avoiding confusion over litigating the same patent simultaneously in separate venues.").

Moreover, the need for uniformity particularly in cases involving the same patents—such as here—favors transfer.  *Telecomm. Sys., Inc. v. TracBeam, L.L.C.*, No. 11-cv–02519-WYD-MJW, 2012 WL 371578 (D. Colo. Feb. 6, 2012) ("[I]n addition to conserving judicial resources, transferring a patent case to a district handling a similar case involving the same patents promotes uniformity in the construction of the patents.") (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (recognizing "the importance of uniformity in the treatment of a given patent")).  Transferring this Action to the Western District of Texas to be adjudicated alongside the Pending '697 Patent Cases would remove the risk of inconsistent rulings regarding the '697 Patent.  *See*

*Whistler Group v. PNI Corp.*, No. 3:03-CV-1536-G, 2003 WL 22939214, at *14 (N.D. Tex. Dec. 5, 2003) ("By permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice. This untenable prospect favors resolving related patent cases in the same forum whenever possible, even if the convenience of the parties and witnesses calls for a different result.") (internal citations omitted); *Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 642 (E.D. Va. 2010) ("[T]he potential for inconsistent judgments in patent cases may be greater on average than for many other types of cases owing chiefly to the large number of issues that typically arise in most patent cases, including, for example, infringement and willful infringement, various invalidity issues under 35 U.S.C. §§ 102, 103, inequitable conduct, laches, waiver, not to mention *Markman* claim term determinations . . . .").

Thus, in light of the four Pending '697 Patent Cases and other factors (including judicial economy and reducing the risk of inconsistent rulings), this Action should be transferred to the Western District of Texas.

### 3. The convenience of the parties and witnesses and the cost of attendance weigh in favor of transfer.

The accessibility of witnesses is closely linked to the convenience of witnesses, which is "the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168–69 (10th Cir. 2010) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). "In analyzing the accessibility of witnesses, the convenience of non-party witnesses weighs

more heavily than the convenience of parties and their employees." *Potter*, 2013 WL 1333483, at *2.

Here, many of the same party and non-party witnesses likely will be relevant both to PerfX's declaratory judgment action in this District and to the four Pending '697 Patent Cases because both sets of actions involve two of the same parties (DynaEnergetics Europe and DynaEnergetics US), along with the same or similar legal issues regarding infringement of the '697 Patent.  For example, the inventors of the '697 Patent—three of whom are not DynaEnergetics employees—are expected to be witnesses in this Action and the Pending '697 Patent Cases.  Transferring this Action to the Western District of Texas would allow the parties and witnesses to coordinate discovery and reduce the burdens on such witnesses.  Conversely, declining to transfer this Action to the Western District of Texas would significantly inconvenience witnesses by subjecting them to overlapping depositions and trials in Colorado and Texas, yielding a much higher cost of attendance.

More generally, for third party witnesses, the Western District of Texas is the more convenient forum for this dispute.  Because of the Permian Basin's location primarily in the Western District of Texas, potential third party witnesses such as DynaEnergetics' and PerfX's customers—who could provide evidence regarding, *inter alia*, the commercial success of the '697 Patent invention—are based in the Western District of Texas or operate there.  *See supra* Parts I.C–D.  Transfer of this Action to the Western District of Texas would lower the cost of witness attendance for any testimony and would allow for coordination with the cases already pending there.  *See Ervin & Assocs., Inc. v. Cisneros*,

939 F. Supp. 793, 799 (D. Colo. 1996) ("I transfer this action to the United States District Court for the District of Columbia under 24 [sic - 28] U.S.C. § 1404(a). This transfer of venue will allow that court to consider the most economic form of case management for the two related cases . . . and the possibility of their consolidation for some or all purposes.").

In addition, the relative ease of access to sources of proof favors transfer because significant evidence relating to the '697 Patent and PerfX's infringement is located in the Western District of Texas. *See supra* Parts I.C–D.  For example, evidence relevant to the accused XConnect system is likely to be located at PerfX's Midland, Texas facility (in the Western District of Texas) or to be in use by PerfX's wireline pumpdown crews in Texas. *See supra* Part I.D.  In addition, numerous PerfX employees with relevant knowledge appear to be located in the Western District of Texas. *Id.*  Moreover, most, if not all, of DynaEnergetics' potential witnesses are located either within the Western District of Texas or in Europe (with three such witnesses in Europe regularly traveling to the Western District of Texas outside of COVID-19 restrictions). *See supra* Part I.C; Grieves Decl. ¶¶ 11-18.  And, DynaEnergetics' U.S. operations related to the allegations in this case are located in Texas, with a flagship location in Blum, meaning that certain relevant DynaEnergetics documents, such as manufacturing and shipping documents, as well as evidence regarding commercial success of the patented DynaStage® perforating system, are located in the Western District of Texas.  None of DynaEnergetics' likely witnesses, documents, or relevant operations are located in Colorado.

Consideration of the above strongly weighs in favor of transfer. *See Kreinberg v. Dow Chemical Co.*, 496 F. Supp. 2d 329, 331 (S.D.N.Y. 2007) (transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are located there"); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 395-97 (S.D.N.Y. 2006) (transfer motion granted where numerous party and nonparty witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum was where the subject misrepresentations alleged were issued or originated).

### 4.  Docket congestion favors transfer.

The administrative difficulties flowing from court congestion favor transfer to the Western District of Texas.  "[T]he most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co.*, 618 F.3d at 1169.  For the 12-month period ending September 30, 2020, for the Western District of Texas, (1) the median time from filing to disposition for civil cases was 6.4 months, (2) the median time from filing to trial for civil cases was 20.4 months, (3) the pending cases per judge was 602, and (4) the average weighted filings per judge was 830.  *Comparison of Districts Within the First Circuit – 12-Month Period Ending September 30, 2020*, *Federal Court Management Statistics*, UNITED STATES COURTS (last visited Feb. 12, 2021), https://www. uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2020.pdf.   In comparison, for the District of Colorado, (1) the median time from filing to disposition for

civil cases was 7.6 months, (2) the median time from filing to trial for civil cases was 33.9 months, (3) the pending cases per judge was 561, and (4) the average weighted filings per judge was 653.  *Id.*  The marginally increased court congestion in the Western District of Texas is far outweighed by the much shorter time to trial and the increased efficiency resulting from the same court adjudicating cases involving the same patent.  Thus, this factor—particularly the large difference in median time from filing to trial—favors transfer.

### 5. The Western District of Texas has a localized interest in resolving the dispute.

The Western District of Texas has a significantly greater local interest in this dispute than this District, weighing in favor of transfer.  *See In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (local interest involves "work and reputation of [] individuals residing in or near that district who presumably conduct business in that community").  Specifically, the Western District of Texas has a localized interest in resolving the parties' dispute because of the Permian Basin's location and because of DynaEnergetics' flagship US facility and PerfX's extensive presence in the Western District of Texas.  *See supra* Parts I.C–D.  DynaEnergetics opened its flagship US location in Blum, Texas in November 2018 with the "objective of becoming the employer of choice for this region."  Grieves Decl. ¶¶ 7-10.  And DynaEnergetics US manufactures components of, assembles, and distributes its patented DynaStage® system from the Blum facility.  Moreover, many of DynaEnergetics' customers are based in the Western District of Texas, and PerfX is engaging in a significant level of infringing activity in the Permian Basin, in the Western District of Texas.  Thus, the operative facts relevant to this Action are much more closely tied to the Western District of Texas than to this District, and residents of the

Western District of Texas have a direct or indirect interest in adjudicating this case. Consideration of this factor favors transfer.

### 6.      The remaining factors are neutral.

The remaining factors—enforceability of a judgment, relative advantages and obstacles to a fair trial, and the possibility of conflict of laws—are neutral.  A fair trial could be obtained and a judgment could be enforced in Texas or Colorado, and patent infringement issues are governed by federal law.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion to Transfer to the Waco Division of the Western District of Texas.

Dated: February 12, 2021

Respectfully submitted,

 *s/ Jonathon D. Bergman*
Jonathon D. Bergman
Aditi Kulkarni-Knight
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
Email: Jon.Bergman@dgslaw.com
Email: Aditi.Kulkarni@dgslaw.com

Barry J. Herman
Maryland Federal Bar No. 26061
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com

*Attorneys for Defendants and Counterclaim
Plaintiffs DynaEnergetics Europe GmbH and
DynaEnergetics US, Inc.*

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)

DynaEnergetics' counsel conferred with PerfX's counsel by email and telephone message on February 12, 2021.  PerfX's counsel indicated by email that PerfX opposes the relief sought in this Motion.

*s/ Jonathon D. Bergman*

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LPtR 17

I hereby certify that this brief complies with the word count requirements set forth in District of Colorado Local Patent Rules 17 and contains approximately 5,360 words.

*s/ Jonathon D. Bergman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2021 the foregoing **DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) TO THE WESTERN DISTRICT OF TEXAS** was filed and served via CM/ECF on the following:

Megan J. Redmond
Carrie A. Bader
ERISE IP, P.A.
7015 College Blvd, Suite 700
Overland Park, KS 66211
Email: megan.redmond@eriseip.com
Email: carrie.bader@eriseip.com

                                        *s/ Melissa Kemp*